*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0856**

State of Minnesota,
Respondent,

vs.

Perry York,
Appellant

**Filed July 20, 2015
Reversed and remanded
Worke, Judge**

Ramsey County District Court
File No. 62-CR-13-8211

Lori Swanson, Attorney General, St. Paul, Minnesota; and

John J. Choi, Ramsey County Attorney, Peter R. Marker, Assistant County Attorney, St. Paul, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Bridget K. Sabo, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Ted Sampsell-Jones, Special Assistant Public Defender, Joshua T. Peterson, Certified Student Attorney, St. Paul, Minnesota (for appellant)

Considered and decided by Worke, Presiding Judge; Hudson, Judge; and Smith, Judge.

UNPUBLISHED OPINION

**WORKE**, Judge

Appellant challenges his conviction of aiding and abetting simple robbery, arguing that an erroneous jury instruction on accomplice liability constituted prejudicial error. We reverse and remand.

## D E C I S I O N

Appellant Perry York argues that the district court erred in its jury instruction on accomplice liability because it failed to include the requirement that, for the jury to find him guilty as an accomplice, he needed to have foreknowledge that the principal was going to commit a crime. We agree.

To be found guilty as an accomplice, one must intentionally aid, advise, hire, counsel, or conspire with another to commit a crime. Minn. Stat. § 609.05, subd. 1 (2012). To conclude that one intentionally aided another in the commission of a crime, the state must prove "(1) that the defendant knew that his alleged accomplices were going to commit a crime, and (2) that the defendant intended his presence or actions to further the commission of that crime." *State v. Milton*, 821 N.W.2d 789, 805 (Minn. 2012) (quotations omitted).[1] Foreknowledge that a crime will be committed is a necessary part of the element of intentionally aiding another in committing a crime.

---

[1] A dispute arose in this case because neither party cited *Milton* in their briefs. The state asserted at oral argument that, because York failed to cite *Milton*, any reliance based upon that case was waived. We disagree. The issue of whether the district court erred in its jury instruction on accomplice liability was properly raised. *Milton* is authority which bears on that issue, and our rules of appellate procedure permit a party to cite a case after briefing or argument, so long as a decision has not yet been issued. Minn. R. Civ. App.

The district court instructed the jury as follows:

The defendant is guilty of a crime committed by another person when the defendant has intentionally aided the other person in committing it, or has intentionally advised, hired, counseled, conspired with, or otherwise procured the person to commit it. The defendant is guilty of a crime, however, only if the other person commits a crime. The defendant is not liable criminally for aiding, advising, hiring, counseling, conspiring, or otherwise procuring the commission of [a] crime unless some crime, including an attempt, is actually committed.

The district court recited from the criminal jury instruction guide (CRIMJIG); however, the CRIMJIG had not yet been updated to reflect the requirement of foreknowledge articulated in *Milton* at the time of York's January 2014 trial. *Compare* 10 *Minnesota Practice*, CRIMJIG 4.01 (2006), *with* 10 *Minnesota Practice*, CRIMJIG 4.01 (Supp. 2014-15). After *Milton* was handed down in late 2012, "the [s]tate had to prove beyond a reasonable doubt that [the defendant] knew his alleged accomplices were going to commit a crime." 821 N.W.2d at 805. This requirement was not articulated to the jury.

York did not object to the jury instruction as given, so this court reviews the instruction for plain error. *State v. Griller*, 583 N.W.2d 736, 740 (Minn. 1998). Plain error is (1) error (2) that is plain and (3) affects the defendant's substantial rights. *Id.* A defendant's substantial rights are affected if the error was prejudicial. *Id.* at 741.

P. 128.05. Further, the practical effect of accepting the state's contention is too great. If mere failure to cite a particular case meant that the court could not consider that case in reaching its decision, then a court would be foreclosed from employing its own research, which may be more thorough than that of the parties. In addition, such a policy has the potential to severely cripple the pro se litigant who may have a meritorious claim, but fails to discover and cite every pertinent case. But perhaps most importantly, our duty is to faithfully apply the law, and a party's failure to cite a case does not relieve us of that obligation.

Prejudicial error is present when "there is a reasonable likelihood that the giving of the instruction in question would have had a significant effect on the verdict of the jury." *Id.* (quotation omitted). If all three elements are met, we must then determine whether we "should address the error to ensure fairness and the integrity of the judicial proceedings." *Id.*

Here, the first two elements are met. The state concedes that there was error that was plain.

The state argues that the error did not affect York's substantial rights, but we cannot agree. To conclude that the third element is not met, we must determine that "considerable evidence" in the record establishes the defendant's guilt, *State v. Kelley*, 855 N.W.2d 269, 284 (Minn. 2014), or that, "as a matter of law, no reasonable jury could find" that the defendant did not commit the crime, *Montanaro v. State*, 802 N.W.2d 726, 733 (Minn. 2011). Here, even viewing the testimony of the state's witnesses in the light most favorable to the conviction, a properly instructed jury could have concluded that York did not have foreknowledge that a crime was going to be committed.

A comparison to *State v. Kelley*, a recently-issued case by our supreme court that also addresses a defective jury instruction on the foreknowledge requirement of accomplice liability in the wake of *Milton*, illustrates the point. 855 N.W.2d 269. In *Kelley*, the victim was at a party for an evening and looking to buy marijuana. *Id.* at 273. The victim met Kelley at the party, and the two went to the house of Kelley's soon-to-be accomplice so the victim could purchase marijuana. *Id.* Later in the evening, Kelley's accomplice came to the location of the party, where he and Kelley spent about half an

hour talking shortly before the robbery. *Id.* at 273, 284. Then Kelley's accomplice lured the victim away from the party to where Kelley was waiting, and the two beat the victim to unconsciousness. *Id.* at 273. When the victim awoke, he discovered missing personal items, including his car keys, and subsequently found that his wallet, containing $240, had been taken from his car. *Id.* The record established that Kelley and his accomplice (1) knew where the victim was spending the evening, (2) knew that the victim was carrying cash or other valuables (from the sale of marijuana earlier in the evening), (3) talked with one another for about half an hour just prior to the robbery, (4) lured the victim away from the party to a location where their conduct was less likely to be observed, and (5) both participated in surprising and beating the victim. The record established that "Kelley knew his friend was going to commit the robbery and intended his presence to further the commission of the crime." *Id.* at 284.

In contrast, here the victim ran into York and his companion on the street. The three interacted for two or three minutes before York's companion pushed the victim into an alcove and started going through his pockets. The victim testified that while this was going on, York was simply standing nearby, looking away from him, possibly so as to block anyone else's view from the street. According to the victim's own testimony, York did not touch him or talk to him while he was being accosted. In comparison to *Kelley*, this record does not provide "considerable evidence," *id.*, that York knew his companion would commit a crime. There is no indication of a preplanned encounter, conspiracy ahead of time, or coordinated action between a pair of assailants akin to that in *Kelley*. A

"reasonable jury," *Montanaro*, 802 N.W.2d at 733, could have concluded that York's companion took spontaneous action and that York went along with it.

Finally, we also conclude that the erroneous instruction affected the fairness of York's trial. The presumption of innocence requires the state to prove every element of a charged offense beyond a reasonable doubt. *State v. Peterson*, 673 N.W.2d 482, 486 (Minn. 2004). The instruction as given relieved the state of that burden. The jury was never made aware of a necessary requirement of intentionally aiding another in the commission of a crime, that of foreknowledge on the part of the alleged accomplice that the principal was going to commit a crime. *Milton*, 821 N.W.2d at 805. Because a reasonable jury could have concluded that York did not have foreknowledge that a crime was going to be committed, and because the jury instruction did not fully articulate established law, a new trial is warranted.

**Reversed and remanded.**