*This opinion is nonprecedential except as provided by Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A25-1139**

State of Minnesota,
Respondent,

vs.

Jeremiah Marquis Johnson,
Appellant.

**Filed June 22, 2026
Affirmed
Wheelock, Judge**

Ramsey County District Court
File No. 62-CR-24-975

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Irene Kao, St. Paul City Attorney, Amra Bašić, Assistant City Attorney, St. Paul, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Amy Lawler, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Wheelock, Presiding Judge; Connolly, Judge; and Smith, Tracy M., Judge.

**NONPRECEDENTIAL OPINION**

**WHEELOCK**, Judge

Appellant argues that his conviction, following a jury trial, for gross-misdemeanor indecent exposure must be reversed because the jury did not receive proper instructions on the meaning of the term "lewdly" under the indecent-exposure statute. We affirm.

# FACTS

In February 2024, appellant Jeremiah Marquis Johnson was charged with gross-misdemeanor indecent exposure in violation of Minnesota Statutes section 617.23, subdivision 2(2) (2022).[1] A jury trial was held on February 19 and 20, 2025, at which the following facts were established.

The victim, M.L., testified that, at around 5:40 a.m. on December 7, 2023, she drove to work and parked her vehicle in the lot. While she was sitting in her vehicle, another vehicle pulled into the spot next to her and parked facing the opposite direction and immediately adjacent to her driver's-side door. When M.L. opened her door to step out, the man in the driver's seat of the other vehicle began speaking to her. The vehicle's window was down, and when M.L. turned toward the voice, she saw the man's face "and then . . . saw what he was doing." She testified that the man was holding his penis and then said something "sexual," along the lines of, "[Y]ou want to suck my dick?"

M.L. stated that it was still dark outside and the dome light was on in the man's vehicle. She could see the man's face "but not too clear." M.L. described being scared and furious about what she saw, so she closed her vehicle door, ran into the building, and told two of her coworkers what had occurred. When they returned to the parking lot, the man's vehicle was gone. M.L.'s supervisor called the police, and M.L. provided a

---

[1] Minnesota Statutes section 617.23, subdivision 1 (2022), identifies the conduct prohibited by the indecent-exposure statute, and subdivision 2 enhances the misdemeanor penalty for a violation of subdivision 1 to a gross misdemeanor if the person has a prior qualifying conviction. Because Johnson has a prior conviction for first-degree criminal sexual conduct from 2006, Johnson was charged under subdivision 2.

description of the man. M.L. later had a difficult time picking the man out of a photo lineup.

M.L. was shown two photos at trial that she testified showed the parking lot next to her workplace. M.L. identified her vehicle in the parking lot and identified the vehicle that had pulled in next to hers. She stated that the other vehicle was "pretty easy to recognize" because the driver's-side door was a different color than the rest of the vehicle.

The sergeant who investigated M.L.'s report also testified. He explained that, because of its distinctive feature of having only one silver door, he was able to identify the vehicle and determined that it had recently been sold. Johnson, the romantic partner of the vehicle's newest owner, matched the description M.L. provided of the suspect. The sergeant stated that he then contacted Johnson, who agreed to come in for an interview.

The sergeant testified that, during the interview, Johnson initially expressed shock and denied being in the parking lot that morning but, after officers showed him some of the surveillance video from the parking lot, he admitted that he was there.[2] Johnson also initially denied having contact with M.L. that day but later said that he argued with someone about him parking too close to them. Johnson then told the sergeant that he had felt the need to "get one off" that morning. The sergeant testified that, based on his experience in the sex-crimes unit, he understood that Johnson was referring to masturbation.

---

[2] The still images from which M.L. identified both her vehicle and Johnson's vehicle were taken from the surveillance footage.

The jury then heard a recording of Johnson's interview in which the sergeant said to Johnson, "Tell me about the masturbating part," and Johnson responded, "I was just minding my business man, I ain't going to lie to you, I was just trying to get one off man, but I wasn't . . . it wasn't . . . to her, like, about her. I never said nothing to that lady."

Johnson testified that, when he told the sergeant that he needed to "get one off," he meant that he was selling marijuana that day and was trying to "get a bag of weed off." Johnson also stated that he was in a "quick argument" after someone accused him of almost hitting their car. Johnson said that, during the interview, he was "baited . . . into the office," blamed for the incident, and told he was caught on video, so he "just said anything to get up out of there."

The jury returned a guilty verdict. Johnson was convicted of the offense and sentenced to 364 days in jail, with credit for 364 days.

Johnson appeals.

## DECISION

Johnson was convicted of indecent exposure. A person is guilty of indecent exposure when they, "in any public place, or in any place where others are present . . . willfully and lewdly expose[] the person's body, or the private parts thereof." Minn. Stat. § 617.23, subd. 1(1).[3] The district court instructed the jury that "lewd" means "openly

---

[3] A person also has committed an indecent-exposure offense when they "procure[] another to expose private parts" or "engage[] in any open or gross lewdness or lascivious behavior, or any public indecency other than behavior specified in this subdivision." *Id.*, subd. 1(2), (3).

lustful or indecent." These instructions were based on the pattern jury instructions for indecent exposure. *See* 10 *Minnesota Practice*, CRIMJIG 13.01 (2023).

Just over two months after Johnson was found guilty, the supreme court interpreted the word "lewdly" as used in section 617.23, subdivision 1(1), for the first time in *State v. Plancarte*, 20 N.W.3d 30, 37-41 (Minn. 2025). The supreme court declined to interpret "lewdly" as "obscene," "indecently," or "lustfully," instead concluding that "lewdly" means "conduct of a sexual nature." *Id.* at 41.

Johnson argues that his conviction must be reversed because, based on *Plancarte*, the jury was not properly instructed on the meaning of "lewd." Johnson and the state agree that, because Johnson did not object to the jury instructions at trial, we review for plain error.

Appellate courts review unobjected-to jury instructions for plain error. *State v. Reek*, 942 N.W.2d 148, 158 (Minn. 2020); *see also* Minn. R. Crim. P. 31.02. Under the plain-error test, an appellant must show (1) error, (2) that is plain, and (3) that affects the appellant's substantial rights. *State v. Griller*, 583 N.W.2d 736, 740 (Minn. 1998). If these three elements are satisfied, the appellant must also show that the error "seriously affects the fairness and integrity of the judicial proceedings." *State v. Little*, 851 N.W.2d 878, 884 (Minn. 2014). If any element of the plain-error test is not met, the appellate court need not consider the other elements. *State v. Brown*, 815 N.W.2d 609, 620 (Minn. 2012). When reviewing for plain error, appellate courts "examine[] the law in existence at the time of appellate review, not the law in existence at the time of the district court's error." *State v. Kelley*, 855 N.W.2d 269, 277 (Minn. 2014).

5

Consistent with extant prior caselaw and jury-instruction guidance, the district court provided the jury with instructions that stated, "'Lewd' means openly lustful or indecent." But in *Plancarte*, the supreme court subsequently rejected that definition and held that, in the context of the indecent-exposure statute, "lewd" refers to "conduct of a sexual nature." 20 N.W.3d at 41. The parties dispute whether the jury instruction here was plain error. But even assuming that there was plain error in the jury instruction, we conclude that Johnson has not established that any error affected his substantial rights and thus that his argument fails at the third prong of the plain-error test.

"An error affects a defendant's substantial rights if the error was prejudicial and affected the outcome of the case." *State v. Watkins*, 840 N.W.2d 21, 28 (Minn. 2013). An error in jury instructions "is prejudicial if there is a reasonable likelihood that giving the instruction in question had a significant effect on the jury's verdict." *Id.* (quotation omitted). The supreme court has stated that the defendant's burden of persuasion on this prong is a "heavy burden." *Griller*, 583 N.W.2d at 741.

In evaluating whether a plainly erroneous jury instruction affected substantial rights, the reviewing court "look[s] to all relevant factors." *State v. Peltier*, 874 N.W.2d 792, 800 (Minn. 2016). The effect of a jury instruction is analyzed by evaluating the evidence presented and the nature of the defense. *Kelley*, 855 N.W.2d at 284. An erroneous jury instruction will not ordinarily have a significant effect on the jury's verdict if there is considerable evidence of the defendant's guilt. *Id.* at 283-84.

Johnson argues that the error was prejudicial because the jury was told that it should convict Johnson based on the "much lower bar" of openly lustful or indecent conduct.

6

Johnson asserts that the distinction between simply showing a penis versus publicly masturbating "could be a legally significant one" and points out that M.L. never testified that Johnson was masturbating.

*Plancarte* is distinguishable. First, it was not a jury-instruction case; rather, the appellant in *Plancarte* was challenging the constitutionality of the statute and the sufficiency of the evidence. 20 N.W.3d at 34; *see State v. Milton*, 821 N.W.2d 789, 807 (Minn. 2012) (declining to conclude plain error existed when jury instructions did not encompass reasoning from sufficiency-of-the-evidence cases). Second, in addressing the lewdness element of indecent exposure, the supreme court relied on the district court's finding that Plancarte "was not engaged in any type of overt public sexual activity or sexual contact with others in addition to the exposure itself." *Plancarte*, 20 N.W.3d at 35. The supreme court stated that "none of the evidence in the record suggests that her conduct was of a sexual nature," *id.* at 42, and that exposure of "the person's body, or the private parts thereof alone is insufficient" for conviction under the statute, *id.* at 36 (quotation omitted).

Johnson's argument that *Plancarte* supports the proposition that M.L. would have had to testify that she saw Johnson masturbating for his conduct to be considered sexual is not persuasive. Unlike in *Plancarte*, the state here offered overwhelming evidence that Johnson's conduct was sexual in nature. Johnson parked his vehicle immediately adjacent to M.L.'s vehicle and positioned his door next to hers. It was dark outside, and Johnson had the dome light on in his vehicle and his window rolled down. As M.L. stepped out of her vehicle, Johnson called out to her, and when she turned to look, Johnson was holding his penis. Johnson also made a sexual comment to M.L. that she testified was, "[Y]ou want

7

to suck my dick?" or something similar. Johnson intentionally drew attention to the fact he was holding his penis. The jury also heard Johnson's police interview in which, after Johnson was asked about masturbating, he stated that he was "just trying to get one off."

Johnson's defense at trial was that M.L.'s version of events was false. Johnson did not offer any evidence that his actions were not "sexual in nature." Johnson testified that, when the sergeant asked him about masturbating and he responded that he "was just trying to get one off man," this statement was not "about her," he never "said nothing to that lady," and he was actually referring to selling marijuana and trying to "get a bag of weed off." Johnson's testimony was evidence offered in support of his theory that the incident never happened and to explain a statement he made during his interview with the sergeant rather than his conduct and statement to M.L. in the parking lot.

Even so, his explanation is unreasonable in light of the evidence offered that his vehicle was intentionally positioned next to M.L.'s, his dome light was on, and his window was rolled down when he called out to M.L. and said something like, "[Y]ou want to suck my dick?" Johnson made no argument at trial that his conduct, if proved, was not sexual in nature.

Given the strength of the state's evidence, the fact that Johnson did not meaningfully contest the "lewd" element of the crime—that his conduct was sexual in nature—and the incredible character of Johnson's defense, there is no reasonable likelihood that the jury instruction the district court provided had a significant effect on the jury's verdict. Thus,

Johnson failed to meet his heavy burden of establishing that his substantial rights were affected by the jury instructions.[4]

**Affirmed.**

---

[4] Because we conclude that Johnson has failed to establish that his substantial rights were affected, we do not reach the other prongs of the plain-error test. *See Brown*, 815 N.W.2d at 620 ("If we conclude that any prong of the plain error analysis is not satisfied, we need not consider the other prongs.").