STATE OF MINNESOTA
IN SUPREME COURT

A13-1928



State of Minnesota,

        Respondent,

vs.

Timothy John Huber,

        Appellant.

O R D E R

Upon the court's own motion and based upon all the files, records and proceedings herein,

IT IS HEREBY ORDERED that page 12 of the slip opinion filed on April 6, 2016, is hereby amended to read as follows:

> prejudice, and it is a heavy burden. *Id.* We conclude Huber has met his burden of proving the plainly erroneous jury instructions affected his substantial rights.
>
> First, Huber contested the State's evidence that he intentionally aided Delbert in the commission of a crime, and he presented evidence that he did not intend to aid the commission of the crime.[5] *See State v. Davis,*

---

[5]    We note that the court of appeals reached the wrong conclusion with respect to this issue. *See State v. Huber*, No. A13-1928, 2014 WL 6862505, at *6 (Minn. App. Dec. 8, 2014) (concluding that erroneous accomplice-liability jury instructions did not affect Huber's substantial rights, in part, because "Huber directly and vigorously contested the aiding-and-abetting element and offered evidence to the contrary"). The fact that Huber contested the aiding-and-abetting element makes it more likely, rather than less likely,

(Footnote continued on next page.)

820 N.W.2d 525, 538 (Minn. 2012) (holding that the defendant's trial strategy impacted whether a plain error in the jury instructions affected the defendant's substantial rights). Specifically, Huber argued and presented evidence that he did not know his father was going to shoot Larson, that he was not present when the altercation occurred and Delbert shot Larson, and that he did not intend his actions to further the commission of the crime. Delbert testified that Huber

IT IS FURTHER ORDERED that the first full paragraph on page 15 of the slip opinion filed on April 6, 2016, is hereby amended to read as follows:

In the end, the jury instructions in this case not only failed to explain the meaning of "intentionally" aiding another in the commission of a crime, but they also failed to require that the aiding and abetting be intentional when stating the elements of the offense. The jury therefore could have believed Huber's version of events and yet still convicted him because of these errors. Specifically, the jury could have believed that Huber did not know Delbert intended to commit a crime and that Huber did not intend for his actions or presence to aid Delbert in the commission of a crime, and still have convicted him simply because the jury concluded Huber's actions or presence at the farm aided Delbert in killing Larson. As a result, we conclude that Huber has established that the plainly erroneous jury instructions affected his substantial rights.

A copy of the opinion as amended is attached to this order.

Dated: April 6, 2016

BY THE COURT:

Christopher J. Dietzen
Associate Justice

---

(Footnote continued from previous page.)

that the erroneous jury instructions affected Huber's substantial rights.

STATE OF MINNESOTA

IN SUPREME COURT

A13-1928

Kandiyohi County

Dietzen, J.
Took no part, Hudson, Chutich, JJ.

State of Minnesota,

Respondent,

vs.

Filed: April 6, 2016
Office of Appellate Courts

Timothy John Huber,

Appellant.

---

Lori Swanson, Attorney General, James B. Early, Assistant Attorney General, Saint Paul, Minnesota; and

Shane Baker, Kandiyohi County Attorney, Willmar, Minnesota, for respondent.

Cathryn Middlebrook, Chief Appellate Public Defender, Saint Paul, Minnesota; and

Julie Loftus Nelson, Assistant State Public Defender, Saint Paul, Minnesota, for appellant.

---

SYLLABUS

1.    The jury instructions on accomplice liability were plainly erroneous because they not only failed to explain the meaning of intentionally aiding another in the commission of a crime, but they also failed to require that the aiding and abetting be intentional when stating the elements of the offense.

1

2.      The erroneous jury instructions allowed the jury to convict the appellant for his mere presence near the commission of the crime, and therefore affected the appellant's substantial rights.

3.      A new trial is required to protect the fairness, integrity, and public reputation of the judicial proceedings.

Reversed and remanded.

## AMENDED OPINION

DIETZEN, Justice.

Appellant Timothy John Huber (Huber) was found guilty by a Kandiyohi County jury of intentionally aiding another in the commission of second-degree intentional murder and second-degree felony murder arising out of the death of Timothy Larson on October 8, 2011. A divided court of appeals panel affirmed, concluding that the accomplice-liability instructions given to the jury were plainly erroneous, but that the error did not affect Huber's substantial rights. We reverse and remand for a new trial on the ground that the accomplice-liability jury instructions were plainly erroneous and affected Huber's substantial rights, and that a new trial is required to protect the fairness, integrity, and public reputation of the judicial proceedings.

This case is the product of a long-standing animosity between Huber and Timothy Larson (Larson). Larson and his father, N.L., owned adjoining farmland in rural Kandiyohi County. Delbert Huber (Delbert), who was 80 years old at the time of the homicide, is Huber's father. Delbert resided on and farmed land near the Larsons' farmland. Larson and his wife lived in Albertville.

2

On the evening of October 8, 2011, Delbert called 911 and reported that he had shot Larson earlier that same day. After the police investigation, Huber was indicted for first-degree premeditated murder, in violation of Minn. Stat. § 609.185(a)(1) (2014); second-degree intentional murder, in violation of Minn. Stat. § 609.19, subd. 1(1) (2014); and second-degree felony murder, in violation of Minn. Stat. § 609.19, subd. 2(1) (2014). Each of these offenses was charged on an accomplice-liability theory. Delbert was also charged with respect to Larson's death; he pleaded guilty and was convicted of second-degree murder.

At Huber's trial, the State presented testimony that Huber and Larson had known each other for many years, and that their relationship became strained over the past several years. Huber believed that Larson was not providing proper care for Larson's father and that Larson had abused Huber's trust by allowing others to hunt on the Huber family's land without permission. Huber also believed that Larson had punctured Huber's tires with nails, shined flashlights into the Huber family home late at night, and cut wires so their cattle could get out. On the other hand, Larson's wife testified that Huber made numerous phone calls and sent letters harassing the Larson family, which Larson later reported to the police.

The simmering dispute boiled over into violence in October 2011. On the evening of October 7, 2011, Larson arrived at his father's farm planning to duck hunt the next morning. N.L. was out of town that weekend for a wedding and, unbeknown to Larson, had made arrangements to have Huber do his farm chores. Larson was surprised to encounter Huber at N.L.'s farm that evening. During their encounter, Larson asked

3

Huber several times to remove his farm equipment and to leave the property, but Huber refused. Larson told Huber that he would do the chores and demanded that Huber not return the next day. Huber later told police that he believed Larson laughed at him and called him an idiot.

Huber called Delbert that evening and told him they needed to remove their farm equipment from N.L.'s property. Huber stated that Larson was harassing him, and that Larson had threatened them, saying "if we came back on the place again that he was going to kill us." Huber also told Delbert that Larson had stolen money from Huber's wallet and parts from his van. Huber and Delbert, with the help of a neighbor, moved their farm equipment to a nearby farm.

On the morning of the murder, Huber drove to N.L.'s farm with Delbert. Delbert, who did not normally carry a gun, brought a rifle and ammunition with him. When they arrived, no one was at the farm. They then went to a neighbor's house to check on their farm equipment. When they finished, Huber drove them both back to N.L.'s farm. On the way back to the farm, Delbert told Huber to stop the car. Delbert took the rifle out of the trunk and brought it into the car. Huber parked the car so that the front end pointed toward the entrance of the driveway of N.L.'s farm. There was testimony that Huber got out of the car and went to N.L's barn to begin the chores, while Delbert remained seated in the car with the door open. Shortly thereafter, Larson arrived at the farm. An altercation ensued between Larson and Delbert. Delbert shot Larson, who was unarmed. Larson died from his injuries.

4

Delbert testified that he did not tell Huber he planned to shoot Larson. He said that he did not ask Huber whether he should bring a gun to N.L.'s farm, and that Huber never touched the gun. Huber did not inform anyone that Delbert killed Larson, and Delbert did not call the police until several hours after the murder.

The jury found Huber guilty of second-degree intentional murder and second-degree felony murder, but acquitted him of first-degree murder. The district court sentenced Huber to 306 months in prison for second-degree intentional murder. A divided court of appeals panel affirmed, concluding that the accomplice-liability instructions given to the jury were plainly erroneous but that the error did not affect Huber's substantial rights. We granted review.

I.

Huber argues that the accomplice-liability instructions given to the jury failed to accurately state the law. According to Huber, the accomplice-liability jury instructions failed to explain the meaning of "intentionally aiding," as required by *State v. Milton*, 821 N.W.2d 789, 807-08 (Minn. 2012), and failed to use the word "intentionally" in describing aiding and abetting as an element of the crime.

We review a district court's jury instructions for an abuse of discretion. *State v. Mahkuk*, 736 N.W.2d 675, 682 (Minn. 2007). The district court enjoys considerable latitude in selecting jury instructions and the language of those instructions. *State v. Kelley*, 855 N.W.2d 269, 274 (Minn. 2014). But the jury instructions must fairly and adequately explain the law of the case and not materially misstate the law. *State v. Carridine*, 812 N.W.2d 130, 144 (Minn. 2012); *State v. Kuhnau*, 622 N.W.2d 552, 556

5

(Minn. 2001). We review the jury instructions as a whole to determine whether they fairly and adequately explain the law. *Kelley*, 855 N.W.2d at 274.

Huber acknowledges that he did not object to the accomplice-liability instructions, and therefore we review the instructions for plain error. Under the plain-error doctrine, the appellant must show that there was (1) an error; (2) that is plain; and (3) the error affected substantial rights. *State v. Griller*, 583 N.W.2d 736, 740 (Minn. 1998) (citing *Johnson v. United States*, 520 U.S. 461, 467 (1997)). If the appellant satisfies the first three prongs of the plain-error doctrine, "we may correct the error only if it 'seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings.' " *State v. Crowsbreast*, 629 N.W.2d 433, 437 (Minn. 2001) (quoting *Johnson*, 520 U.S. at 467).

Minnesota Statutes § 609.05 (2014) addresses when an accomplice is liable for a crime committed by someone else. It provides, in part: "A person is criminally liable for a crime committed by another if the person intentionally aids, advises, hires, counsels, or conspires with or otherwise procures the other to commit the crime." *Id.*, subd. 1. The statute, however, does not define the phrase "intentionally aids."[1]

At issue in this case are the jury instructions for second-degree intentional murder and second-degree felony murder. The instructions for each of these offenses described the meaning of "liability for crimes of another" and then set forth the elements of the crime that the State was required to prove beyond a reasonable doubt. Specifically, the "liability for crimes of another" portion of the instructions for both counts stated: "The

---

[1]    "Intentionally" is defined in Minn. Stat. § 609.02, subd. 9(3) (2014).

defendant is guilty of a crime committed by another person when the defendant has intentionally aided the other person in committing it, or has intentionally advised, hired, counseled or conspired with, or otherwise procured the other person to commit it."

When setting forth the specific elements of the crime hybrid instructions that incorporated the theory of accomplice liability into the instruction for each offense were used.[2] The hybrid instructions listing the elements of second-degree intentional murder and second-degree felony murder contained 13 references to Delbert being "aided and

---

[2] For example, the instruction identifying the elements of second-degree intentional murder stated as follows:

"Intentional" Elements:

First, the death of Timothy Larson must be proven.

Second, Timothy Huber, or Delbert Huber aided and abetted by Timothy Huber, caused the death of Timothy Larson.

Third, Timothy Huber, or Delbert Huber aided and abetted by Timothy Huber, acted with the intent to kill Timothy Larson. To find Timothy Huber, or Delbert Huber aided and abetted by Timothy Huber, had an intent to kill, you must find that Timothy Huber, or Delbert Huber aided and abetted by Timothy Huber, acted with the purpose of causing death, or believed that the act would have that result. Intent, being a process of the mind, is not always susceptible to proof by direct evidence, but may be inferred from all the circumstances surrounding the event. It is not necessary that Timothy Huber's act, or Delbert Huber's act aided and abetted by Timothy Huber, be premeditated.

Fourth, the act of Timothy Huber, or Delbert Huber aided and abetted by Timothy Huber, took place on or about October 8, 2011, in Kandiyohi County.

If you find that each of these elements has been proven beyond a reasonable doubt, the defendant is guilty. If you find that any element has not been proven beyond a reasonable doubt, the defendant is not guilty.

7

abetted by" Huber. These instructions omitted the word "intentionally" every time they referred to Huber aiding and abetting Delbert.

We will first discuss our case law regarding jury instructions on accomplice liability. Then, using a plain-error analysis, we will apply that case law to the facts of this case to determine if Huber is entitled to a new trial based on alleged errors in the jury instructions for accomplice liability.

A.

We recently considered whether jury instructions on accomplice liability constituted plain error because they failed to properly instruct the jury on the "intentionally aiding" element of accomplice liability under Minn. Stat. § 609.05, subd. 1. *See Kelley*, 855 N.W.2d at 275; *Milton*, 821 N.W.2d at 806-08. In *Milton*, we held for the first time that the accomplice-liability instructions given to the jury must explain the "intentionally aiding" element of accomplice liability. 821 N.W.2d at 807. Specifically, the instructions must explain that to be criminally liable for the crimes of another, the State must prove that the defendant "knew his alleged accomplice was going to commit a crime and the defendant intended his presence or actions to further the commission of that crime." *Id.* at 808. We reasoned that without providing the explanation of "intentionally aiding," a reasonable jury would not know that it needed to find the presence of these two *mens rea* requirements in order to find the defendant guilty as an accomplice. *Id.*

*Milton* addressed the jury instructions for two charges: first-degree felony murder and attempted first-degree felony murder. *Id.* at 806-09. In the instruction setting out the

8

elements of first-degree felony murder, the district court instructed the jury, in part, that it had to find the defendant "intentionally aided" the person who caused the death of the victim. *Id.* at 806. We concluded this instruction did not "properly explain the element of 'intentionally aiding' to the jury," but we also concluded this error was not plain because we had "never before specifically required district courts to explain to juries that a defendant intentionally aids another person if the defendant knowingly and intentionally assists in the commission of the underlying crime." *Id.* at 807. The jury instructions for attempted first-degree felony murder made no reference to "intentionally aiding" another. *Id.* at 808. We concluded these instructions were plainly erroneous because they omitted the intentionally aiding "element altogether." *Id.*

In *Kelley*, the district court gave an unobjected-to accomplice-liability instruction that stated, in part: "The defendant is guilty of a crime committed by another person when the defendant has intentionally aided the other person in committing it." 855 N.W.2d at 274 n.5. We concluded the instruction was erroneous because it "failed to explain the 'intentionally aiding' element as required by *Milton*." *Kelly*, 855 N.W.2d at 275. We further concluded that this error was plain because *Milton* had been decided by the time of Kelley's appeal. *Id.* at 277.

We conclude that the accomplice-liability instructions given in this case constituted plain error because, taken as a whole, they failed to properly inform the jury that the State had to prove beyond a reasonable doubt that Huber intentionally aided or assisted another in committing a crime. *See Kelley*, 855 N.W.2d at 275; *Milton*, 821 N.W.2d at 807. The instructions on the elements for each offense were hybrid

9

instructions that told the jury what the State had to prove to find Huber guilty as either a principal who committed the offense or as an accomplice who aided and abetted Delbert in committing it. But this portion of the instructions omitted the requirement that Huber's aiding of Delbert be "intentional."[3] *See Milton*, 821 N.W.2d at 808 (concluding jury instructions on accomplice liability were plainly erroneous because they omitted the "intentionally aiding" element); *see also State v. Watkins*, 840 N.W.2d 21, 27-28 (Minn. 2013) (holding that an unobjected-to jury instruction that omitted the "knowing" element of the offense constituted plain error).

The more general instructions addressing the law of accomplice liability further compounded this error. These instructions did state that a defendant is guilty of a crime committed by another if the defendant "intentionally aided the other person in committing it." But like the instruction we found to be a plain error in *Kelley*, these instructions failed to explain the meaning of "intentionally aiding." *See* 855 N.W.2d at 275. They did not inform the jury that in order to conclude that Huber had intentionally aided another in committing a crime, the State had to prove beyond a reasonable doubt

---

[3] The hybrid instructions on the elements of each offense included the theory of accomplice liability with the elements for each substantive offense. In prior cases, we have "encourage[d] district courts to separately instruct the jury on accomplice liability and the underlying substantive offense," as opposed to incorporating the theory of accomplice liability into the instructions on the elements of the substantive offenses for which the defendant was charged. *See State v. Bahtuoh*, 840 N.W.2d 804, 815 n.1 (Minn. 2013). Once again, we encourage district courts to separately instruct the jury on accomplice liability and on the underlying elements of the substantive offenses because when the district court conflates the elements of accomplice liability and the underlying substantive offense, the instruction risks omitting the "intentionally aiding" element of accomplice liability.

10

that Huber knew the other person was going to commit a crime and intended his actions or presence to further the commission of that offense.[4] *See id.*

We hold that the combined effects of these errors resulted in accomplice-liability jury instructions that were plainly erroneous. The instructions not only failed to explain the meaning of intentionally aiding another in the commission of a crime, but they also failed to require that the aiding and abetting be intentional when stating the elements of the offense. Thus, the instructions erroneously allowed the jury to convict Huber for his mere presence near the commission of the crime or because his actions assisted Delbert in committing a crime, regardless of Huber's *mens rea*. Because the instructions were plainly erroneous, we must next examine whether the instructions affected Huber's substantial rights.

### B.

An erroneous jury instruction affects a defendant's substantial rights if the error was prejudicial and affected the outcome of the case. *State v. Wenthe*, 865 N.W.2d 293, 299 (Minn. 2015); *Griller*, 583 N.W.2d at 741. "An error in instructing the jury is prejudicial if there is a reasonable likelihood that giving the instruction in question had a significant effect on the jury's verdict." *Watkins*, 840 N.W.2d at 28 (quoting *State v. Gomez*, 721 N.W.2d 871, 880 (Minn. 2006)). The defendant has the burden of proving

---

[4] The *Kelley* jury instructions are distinguishable from the instructions given in this case. The jury instructions in this case contain additional errors not found in *Kelley*. Unlike *Kelley*, the jury instructions in this case were hybrid instructions that incorporated the theory of accomplice liability into the elements for each offense. *See* 855 N.W.2d at 275 n.5. And when identifying the elements for each offense, on 13 occasions the hybrid instructions omitted the requirement that the aiding and abetting be intentional.

prejudice, and it is a heavy burden. *Id.* We conclude Huber has met his burden of proving the plainly erroneous jury instructions affected his substantial rights.

First, Huber contested the State's evidence that he intentionally aided Delbert in the commission of a crime, and he presented evidence that he did not intend to aid the commission of the crime.[5] *See State v. Davis*, 820 N.W.2d 525, 538 (Minn. 2012) (holding that the defendant's trial strategy impacted whether a plain error in the jury instructions affected the defendant's substantial rights). Specifically, Huber argued and presented evidence that he did not know his father was going to shoot Larson, that he was not present when the altercation occurred and Delbert shot Larson, and that he did not intend his actions to further the commission of the crime. Delbert testified that Huber never touched the rifle, that he did not ask Huber whether he should bring a rifle to N.L.'s farm on the morning of the murder, that he did not tell Huber he intended to shoot Larson, and that Huber was in the barn when he shot Larson. Huber told police that he was in the barn when the shooting occurred and that Delbert brought the rifle along for protection. Moreover, Huber argued and presented testimony that he was under the control of Delbert, who was an abusive father. There was testimony by two witnesses

---

[5] We note that the court of appeals reached the wrong conclusion with respect to this issue. *See State v. Huber*, No. A13-1928, 2014 WL 6862505, at *6 (Minn. App. Dec. 8, 2014) (concluding that erroneous accomplice-liability jury instructions did not affect Huber's substantial rights, in part, because "Huber directly and vigorously contested the aiding-and-abetting element and offered evidence to the contrary"). The fact that Huber contested the aiding-and-abetting element makes it more likely, rather than less likely, that the erroneous jury instructions affected Huber's substantial rights.

that over the years Delbert hit Huber in the head with a baseball bat, slapped him in the face with a glove, and threatened to kick him if he did not finish his work.

Second, the State's evidence that Huber intentionally aided Delbert in shooting Larson was not overwhelming. The State's evidence on the intentionally aiding element was entirely circumstantial. There was no direct evidence that Huber knew Delbert intended to commit any crime against Larson on the morning of the murder or that Huber was nearby when the altercation or the shooting occurred. *Compare Kelley*, 855 N.W.2d at 284 (concluding there was no reasonable likelihood that erroneous jury instructions on accomplice liability had a significant effect on the verdict, in part, because there was strong proof of the intentionally aiding element, including that the defendant actively participated in the robbery by rummaging through the victim's pockets while the victim was on the ground and punching and kicking the victim after his belongings were taken). Nor did Huber admit that he and Delbert had agreed to commit any crime or had taken steps in preparation to do so. *Compare Milton*, 821 N.W.2d at 797, 809-10 (concluding that the omission of the intentionally aiding element from the accomplice-liability jury instruction did not affect the defendant's substantial rights, in part, because the defendant admitted that he and his alleged accomplices had planned to rob the murder victim, had made "fake money" in preparation for doing so, and the defendant used his truck to drive his alleged accomplices to the planned robbery). Although the State presented circumstantial evidence on the intentionally aiding element, Huber presented evidence to the contrary that, if believed by the jury, supported his argument that he did not know Delbert intended to shoot Larson and that Huber did not intend his presence or actions to

13

further the commission of Delbert's crime. The State counters that in *Kelley* we determined that the evidence need only be "considerable," not overwhelming, in order to conclude that the defendant failed to show a plain error in the jury instructions affected his substantial rights. *Kelley*, 855 N.W.2d at 284-85. But *Kelley* is distinguishable. Unlike in *Kelley*, the evidence on the intentionally aiding element in this case was highly contested and equivocal. Moreover, in *Kelley* we did not rely exclusively on the strength of the State's evidence in finding that the plain error in the jury instructions did not affect Kelley's substantial rights. *See id.* at 284.

It is true that we have, at different times, used the words "overwhelming," "considerable," and "ample" to describe the quantum of evidence required in determining whether a plain error in the jury instructions affected a defendant's substantial rights. *See Milton*, 821 N.W.2d at 809 (stating that the evidence was "ample"); *Kelley*, 855 N.W.2d at 283-84 (stating that the evidence was "considerable"). But these words are not contradictory. Rather, the words describe a large quantum of evidence presented by the State on the contested element, and the quantum of evidence necessary may depend on our analysis of any other relevant factors in a substantial-rights analysis. Here, the evidence presented by the State cannot be characterized as "overwhelming," "considerable," or "ample." Given our analysis of other relevant factors, the State's evidence was insufficient to overcome the prejudice caused by errors in the jury instructions.

In the end, the jury instructions in this case not only failed to explain the meaning of "intentionally" aiding another in the commission of a crime, but they also failed to

14

require that the aiding and abetting be intentional when stating the elements of the offense. The jury therefore could have believed Huber's version of events and yet still convicted him because of these errors. Specifically, the jury could have believed that Huber did not know Delbert intended to commit a crime and that Huber did not intend for his actions or presence to aid Delbert in the commission of a crime, and still have convicted him simply because the jury concluded Huber's actions or presence at the farm aided Delbert in killing Larson. As a result, we conclude that Huber has established that the plainly erroneous jury instructions affected his substantial rights.

## C.

Thus, we must next consider the fourth prong of the plain-error test: whether a new trial is required to ensure the fairness, integrity, and public reputation of judicial proceedings. A plain error that affects a defendant's substantial rights, without more, does not entitle a defendant to a new trial. *See United States v. Olano*, 507 U.S. 725, 737 (1993). Rather, a new trial will only be granted when it is necessary to ensure the fairness, integrity, or public reputation of judicial proceedings. *See id.* at 736-37. Although the fairness, integrity, and public reputation of judicial proceedings is sometimes served by ordering a new trial when a defendant's substantial rights were affected by a plain error, that is not always the case.

In *Griller*, we described the defendant's version of events as "far-fetched," and concluded that "[g]ranting Griller a new trial under these circumstances would be an exercise in futility and a waste of judicial resources," which would thwart the integrity of judicial proceedings. 583 N.W.2d at 742. The United States Supreme Court has

15

similarly concluded that granting new trials in the face of uncontroverted or overwhelming evidence "encourages litigants to abuse the judicial process and bestirs the public to ridicule it." *Johnson*, 520 U.S. at 470; *see also United States v. Cotton*, 535 U.S. 625, 634 (2002) ("The . . . threat to the 'fairness, integrity, or public reputation of judicial proceedings' would be if respondents, despite the overwhelming and uncontroverted evidence that they were involved in a [crime], were to receive a sentence . . . for [a lesser crime] because of an error [not] objected to at trial.").

The plain-error doctrine tempers the blow of a rigid application of the contemporaneous-objection requirement. *See* Minn. R. Crim. P. 31.02 (allowing plain errors that affect substantial rights to be considered on appeal even if the error was not brought to the district court's attention). The doctrine, however, is discretionary and authorizes appellate courts to correct only "particularly egregious errors," *United States v. Frady*, 456 U.S. 152, 163 (1982)—in other words, those errors that "seriously affect the fairness, integrity, or public reputation of judicial proceedings," *United States v. Atkinson*, 297 U.S. 157, 160 (1936). Put differently, the fourth prong is satisfied only "in those circumstances in which a miscarriage of justice would otherwise result." *Frady*, 456 U.S. at 163 n.14. This rule balances our need to encourage trial participants to seek a fair and accurate outcome the first time around against the principle that an injustice must be redressed. *Id.* at 163; *see also United States v. Young*, 470 U.S. 1, 15-16 (1985).

We conclude that a new trial is required to protect the fairness, integrity, and public reputation of judicial proceedings. The error in this case was particularly serious because it prevented the jury from fully considering Huber's defense that he did not

16

intentionally aid Delbert in committing any crime. The instructions allowed the jury to convict Huber merely because he was present at the farm or took some actions that may have assisted Delbert in committing an offense. The evidence presented at trial to prove that Huber intentionally aided Delbert was not overwhelming and was disputed. Based on the specific facts of this case, we conclude that allowing Huber to receive a new trial will protect the fairness, integrity, and public reputation of the judicial proceedings.

Reversed and remanded.


HUDSON, J., not having been a member of this court at the time of submission, took no part in the consideration or decision of this case.

CHUTICH, J., took no part in the consideration or decision of this case.