STATE of Minnesota, Respondent,

v.

Daley Marie SMITH, Appellant.

A16-1607

Court of Appeals of Minnesota.

Filed August 21, 2017

---

Lori Swanson, Attorney General, Matthew Frank, Assistant Attorney General, St. Paul, Minnesota; and Joe Walsh, Mille Lacs County Attorney, Milaca, Minnesota (for respondent).

Cathryn Middlebrook Chief Appellate Public Defender, Jenna Yauch-Erickson, Assistant Public Defender, St. Paul, Minnesota (for appellant).

Considered and decided by Rodenberg, Presiding Judge; Reilly, Judge; and Klaphake, Judge.*

## OPINION

RODENBERG, Judge

Appellant challenges her convictions of aiding and abetting first-degree aggravated robbery, aiding and abetting second-degree assault, aiding and abetting third-degree assault, and aiding and abetting simple robbery. She asserts that she is entitled to a new trial because the district court erred in its accomplice-liability instruction to the jury. Because the district

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

court's jury instruction did not misstate the law, we affirm.

## FACTS

This case arises from an assault and robbery in the home of N.N. and A.M. on December 21, 2013. J.F. was there as a visitor. On that day, Chadric McKee struck N.N. three times in the head, fracturing N.N.'s jaw. McKee grabbed A.M. by the hair, pointed a gun at her head, and demanded money. Finally, McKee approached J.F. with the gun in his hand and took her cash, prescription medication, and cell phone. A total of three cell phones were taken.

Appellant Daley Marie Smith was charged as McKee's accomplice under Minn. Stat. § 609.05. At trial, the central issue was whether appellant is criminally liable for the crimes committed by McKee.

Appellant had repeatedly asked to borrow money from J.F. before the robbery. J.F. initially agreed to lend money to appellant, and then changed her mind. Appellant came to the home of N.N. and A.M. on December 21 to borrow money. J.F. was at the home, but hid in a bedroom under the pretense of not being home. Appellant left and told N.N. and A.M. that she would return later in the day. Appellant then called J.F. and asked when she would return home and if she had paid rent to A.M. and N.N.

Later that day, appellant returned to the home of N.N. and A.M., accompanied by McKee, whom N.N. and A.M. did not know. J.F. again retreated to the bedroom to avoid appellant. Upon entering the home with appellant, McKee pulled a bandana over his face and struck N.N. three times in the head. A.M. testified that ap-

Minn. Const. art. VI, § 10.

pellant was standing between her and McKee in the hallway during part of the attack, and "was just kind of blocking my way so I couldn't get [past] her." Between McKee's second and third strike to N.N.'s head, appellant went to the bedroom where J.F. was hiding.

J.F. heard the commotion and called 911 from a bedroom closet. Without ending the call with the emergency operator, J.F. stepped from the closet and saw appellant in the bedroom. J.F. testified that appellant looked surprised. When J.F. asked appellant what was going on, appellant said, "[McKee's] going crazy." McKee approached the bedroom and stopped near the bedroom door, holding the gun in his hand. J.F. gave him her money, prescription pills, and cell phone, which was still connected to 911. J.F. testified that appellant stood by while this occurred, but did not demand or physically take any of the items. McKee and appellant left the house together. A.M. and J.F. testified that appellant did not appear upset when she left.[1]

The state charged appellant as an accomplice to first-degree aggravated robbery, second-degree assault, and third-degree assault. At trial, the district court instructed the jury on each of those offenses and the lesser-included offense of simple robbery. The district court included an accomplice-liability instruction with the instructions for each crime. The jury was instructed that a defendant's presence constitutes aiding if "the defendant knew her alleged accomplices were going to or were committing a crime" and "intended that her presence and actions aid the commission of the crime." This accomplice-liability instruction mirrored the CRIMJIG 4.01

instruction. 10 *Minnesota Practice*, CRIMJIG 4.01 (Supp. 2016).

The jury found appellant guilty of each charged offense. This appeal follows.

## ISSUE

Was the district court's accomplice-liability instruction plainly erroneous?

## ANALYSIS

Appellant argues that the district court's jury instruction constitutes plain error affecting her substantial rights and warrants a new trial. She challenges the district court's jury instruction on accomplice liability as deviating from language used by the Minnesota Supreme Court in several prior cases to describe the knowledge element under Minn. Stat. § 609.05. She alternatively argues that the instruction allowed her to be convicted for her mere presence at the scene of a crime.

The state's theory at trial was that appellant enlisted McKee to assist her in stealing the money she had earlier requested to borrow from J.F. and that the two of them were accomplices from the outset of the robbery. The evidence is undoubtedly sufficient for the jury to have found that this is what happened. But if appellant is correct that the jury instruction allowed the jury to find her criminally liable for crimes of another beyond the scope of the accomplice-liability statute, then a new trial is warranted. Because the jury was only asked to decide if appellant was guilty or not guilty, the adequacy of the jury instruction is critically important.

Appellant did not object to the district court's accomplice-liability instruction; we therefore review the instruction

---

1. A recording of the 911 call placed by J.F. was played to the jury. The recording captured the commotion during the robbery, demands for the phones, and the sounds of McKee and appellant leaving the house and entering a car. Upon entry into the car, a female voice calmly asks if it is fine to smoke in the car.

for plain error. *State v. Milton*, 821 N.W.2d 789, 805 (Minn. 2012). "Under the plain-error doctrine, the appellant must show that there was (1) an error; (2) that is plain; and (3) the error affected substantial rights." *State v. Huber*, 877 N.W.2d 519, 522 (Minn. 2016). "An error is plain if it was clear or obvious," and an error is usually clear or obvious if it "contravenes case law, a rule or a standard of conduct." *State v. Ramey*, 721 N.W.2d 294, 302 (Minn. 2006) (quotation omitted). If appellant satisfies her burden concerning the three elements of plain error, "we may correct the error only if it seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Huber*, 877 N.W.2d at 522 (quotations omitted).

District courts are afforded "broad discretion and considerable latitude in choosing the language of jury instructions." *Milton*, 821 N.W.2d at 805 (quotation omitted). Appellate courts review jury instructions as a whole to determine whether the instructions accurately state the law in a manner that could be understood by the jury. *State v. Kelley*, 855 N.W.2d 269, 274 (Minn. 2014). The jury instructions must define the crime charged and explain the elements. *Milton*, 821 N.W.2d at 805. "To determine if a jury instruction correctly states the law, we analyze the criminal statute and the case law under it." *State v. Taylor*, 869 N.W.2d 1, 15 (Minn. 2015).

"A person is criminally liable for a crime committed by another if the person intentionally aids, advises, hires, counsels, or conspires with or otherwise procures the other to commit the crime." Minn. Stat. § 609.05, subd. 1. The statute further provides that "[a] person liable under subdivision 1 is also liable for any other crime committed in pursuance of the intended crime if reasonably foreseeable by the person as a probable consequence of committing or attempting to commit the crime intended." *Id.*, subd. 2.

The Minnesota Supreme Court has held that an accomplice-liability instruction must adequately explain the "intentionally aiding" element of section 609.05, subdivision 1. *Milton*, 821 N.W.2d at 808. "Intentionally aiding" has been interpreted to include two mens rea elements: (1) "the defendant knew his alleged accomplice was going to commit a crime," and (2) "the defendant intended his presence or actions to further the commission of that crime." *Huber*, 877 N.W.2d at 524 (quotation omitted); *Milton*, 821 N.W.2d at 808.

In *Milton*, the supreme court held that an accomplice-liability instruction is erroneous if it "allow[s] the jury to find [the defendant] guilty as an accomplice without first finding that [the defendant] knowingly and intentionally assisted in the commission of a crime." 821 N.W.2d at 805-06. It went on to prescribe that an accomplice-liability instruction must explain to the jury that "in order to find a defendant guilty as an accomplice, the jury must find beyond a reasonable doubt that the defendant knew his alleged accomplice was going to commit a crime and the defendant intended his presence or actions to further the commission of that crime." *Id.* at 808. While requiring the "intentionally aiding" element to be explained to the jury, the supreme court noted that district courts are afforded considerable latitude in choosing the language to explain that element. *Id.* at 808 n.12.

Here, the district court described the knowledge requirement as being that "the defendant knew her alleged accomplices were going to or were committing a crime." Appellant argues that the instruction is erroneous because it deviates from the language repeatedly used by the Minnesota Supreme Court to describe the knowledge element. *See Huber*, 877

N.W.2d at 525 ("[T]he State had to prove beyond a reasonable doubt that Huber knew the other person *was going to commit....*" (emphasis added)); *Kelley*, 855 N.W.2d at 283 (requiring the state to prove the defendant "knew his friend *was going to commit* the robbery" (emphasis added)); *State v. Bahtuoh*, 840 N.W.2d 804, 810 (Minn. 2013) (requiring the state to prove that the defendant knew his alleged accomplices *"were going to commit a crime"* (emphasis added)); *State v. Mahkuk*, 736 N.W.2d 675, 683 (Minn. 2007) (requiring proof that the defendant "knew that his alleged accomplices *were going to commit a crime"* (emphasis added) (quotation omitted)).

■ Appellant first argues that deviation from the supreme court's prescribed language for the "intentionally aiding" element is, without more, error. Deviation from the supreme court's specific language does not indicate error. *Milton* requires the two mens rea elements within "intentionally aiding" to be adequately described to the jury as part of an accomplice-liability instruction. 821 N.W.2d at 808. The supreme court specifically noted that a district court retains discretion to select the language to be used to describe the "intentionally aiding" element. *Id.* at 808 n.12. Therefore, deviation from the precise language used in *Milton* is not erroneous unless the instruction on "intentionally aiding" materially misstates the law, or confuses or misleads the jury. *Kelley*, 855 N.W.2d at 274.

Appellant argues that the instruction, as given, materially misstates the law. She argues that the addition of the words "or were committing" to the knowledge element within "intentionally aiding" permitted the jury to convict appellant of a crime of which she had no advance knowledge. She argues that the supreme court's description of the knowledge element as requiring a defendant to know that the accomplice "was going to commit a crime" indicates that foreknowledge of the accomplice's plan or intent to commit a crime is necessary for a conviction under section 609.05.

■ We do not read *Mahkuk, Milton,* or the cases that follow, as requiring knowledge of an accomplice's criminal intent before the crime commences. Rather, we read those cases to require a defendant to possess knowledge of the crime *before the defendant intentionally aids in its commission.* A defendant who acquires the requisite knowledge while the accomplice is in the process of committing the offense, and makes the choice to aid in its commission either through her presence or her actions, is guilty as an accomplice under the plain language of Minn. Stat. § 609.05. The statute requires knowledge of the crime at the time of the acts or presence amounting to aid.[2] For example, in *State v. McAllister*, the Minnesota Supreme Court considered whether the evidence was sufficient to support the defendant's conviction as an accomplice to a murder. *State v. McAllister*, 862 N.W.2d 49, 52 (Minn. 2015). The questions there presented were whether the evidence was sufficient for a jury to conclude that the defendant was an

---

**2.** In *Taylor,* the supreme court considered an instruction similar to the instruction at issue here. 869 N.W.2d at 15. The supreme court acknowledged that the district court's instruction that the presence be done "knowing that a crime will be or is being committed and intending that it further the commission of the crime" came from CRIMJIG 4.01 and caselaw requiring knowledge and intent. *Id.* The supreme court held that efficacy of the aid rendered is not a required element for which an instruction is necessary and therefore the instruction was not erroneous as given. *Id.* at 16. *Taylor* did not consider the precise arguments advanced by appellant in this appeal.

accomplice to a robbery and whether the murder was a reasonably foreseeable consequence of the robbery. *Id.* at 53-56. The supreme court determined that the knowledge requirement of "intentionally aiding" was satisfied where "even if [the defendant] did not know that his nephews were going to beat and rob [the victim] when the men entered the alley, we can infer that he acquired such knowledge as the altercation progressed." *Id.* at 55. His knowledge of the crime "as the altercation progressed," as well as his active participation in the attack and robbery, were sufficient for a jury to find the defendant guilty as an accomplice to the robbery. *Id.*

 Put another way, a defendant is criminally liable under Minn. Stat. § 609.05 for crimes committed by another if she intends her presence or actions to aid the other in committing an offense that she knows is criminal. *See State v. McKenzie*, 532 N.W.2d 210, 222 (Minn. 1995) (recognizing that the required mens rea for accomplice liability may occur "at or before the commission of the crime").

 Knowledge and intent are both necessary elements that the state must prove beyond a reasonable doubt. *Mahkuk*, 736 N.W.2d at 682. Unless both are proved, a person is not criminally liable for acts of another. For example, if a person plans to rob a bank and asks a friend for a ride to the bank, if the friend provides the ride she has aided a crime. But if the friend did not know of the intent to commit a crime, she could not form the necessary intent to aid the crime. If, on the other hand, the would-be robber informs the friend that he plans to rob the bank and asks for a ride to the bank in order to do so, the friend is guilty as an accomplice if she provides the ride. In this second scenario, the friend both possessed knowledge of the crime, and intended to aid by providing a ride. However, there is a third

scenario: the friend becomes aware of the robber's criminal plans upon arriving at the bank and continues to assist after learning that the robbery is taking place. Here, the friend possesses knowledge of the crime at a point in time at or before rendering aid. If the friend, with knowledge of the robbery, provides the get-away ride or otherwise aids in the commission of the crime, the elements of Minn. Stat. § 609.05 are satisfied.

These principles were effectively communicated to the jury through the district court's accomplice-liability instruction. We are satisfied that the jury understood that appellant was subject to liability as an accomplice if she intended her presence or actions to aid in the commission of an offense at a point in time when she knew her accomplice was going to commit or was in the process of committing a crime.

 To the extent appellant argues that the language of the instruction would permit imposition of criminal liability for being present at a crime without possessing knowledge that another intended to commit any crime, we are satisfied that the intent requirement as instructed by the district court adequately protects the innocent. To be criminally liable as an accomplice, the person must, upon gaining knowledge that the crime is occurring, intend to aid the commission of the crime. *See State v. Williams*, 759 N.W.2d 438, 443 (Minn. App. 2009) (recognizing that "[m]ere presence at the scene of a crime does not, by itself, prove liability for the crime of another because 'inaction, knowledge, or passive acquiescence do not rise to the level' of criminal culpability" (quoting *State v. Russell*, 503 N.W.2d 110, 114 (Minn. 1993))); *see also Milton*, 821 N.W.2d at 808 (requiring, for criminal liability as an accomplice, the state to prove the defendant intended her presence or actions to further the commission of the

crime). The district court here instructed the jury that presence constitutes aiding if appellant knew McKee was going to or was committing a crime *and* "intended that her presence and actions aid the commission of the crime." The jury concluded that the state proved appellant to have aided McKee's crimes.

Because the district court's jury instruction was not erroneous, there was no plain error.

## DECISION

The district court did not err by defining accomplice liability under Minn. Stat. § 609.05 as including knowledge that her alleged accomplice was going to commit a crime or was committing a crime. We therefore affirm.

**Affirmed.**