*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A23-0615**

State of Minnesota,
Respondent,

vs.

Justin James Holinka,
Appellant.

**Filed May 6, 2024**
**Affirmed**
**Smith, Tracy M., Judge**

Cottonwood County District Court
File No. 17-CR-21-483

Keith Ellison, Attorney General, Ed Stockmeyer, Assistant Attorney General, St. Paul, Minnesota; and

Nicholas A. Anderson, Cottonwood County Attorney, Windom, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Peter H. Dahlquist, Assistant Public Defender, Edina, Minnesota (for respondent)

        Considered and decided by Connolly, Presiding Judge; Smith, Tracy M., Judge; and

Reilly, Judge.*

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**SMITH, TRACY M.**, Judge

In this appeal from a final judgment of conviction for first-degree controlled-substance sale, appellant Justin James Holinka raises three arguments to challenge his conviction. First, he argues that the district court committed reversible plain error by allowing investigators to testify about an out-of-court statement identifying Holinka as the seller, which was made by an investigator who did not testify at trial, because the evidence was inadmissible hearsay and violated Holinka's rights under the Sixth Amendment Confrontation Clause of the United States Constitution. Second, he argues that, even if the hearsay and Confrontation Clause errors were not individually prejudicial, taken cumulatively, they deprived him of his right to a fair trial. Finally, Holinka argues that his trial counsel was ineffective because his counsel did not object to the testimony. We affirm.

## FACTS

The following facts are drawn from the jury trial in this case and the district court record.

**Controlled Buy**

In May 2021, the Cottonwood County Drug Task Force conducted a controlled buy of methamphetamine with the assistance of two confidential informants, S.C. and R.C. The informants arranged to purchase an ounce of methamphetamine from an individual, K.F., in exchange for $700. On the date of the controlled buy, the informants went to K.F.'s residence in Windom while investigators conducted surveillance nearby.

When the informants arrived, K.F. did not have any methamphetamine. K.F. told the informants that the seller was driving from Jackson to drop off the methamphetamine. The informants proceeded to wait with K.F. in his garage for the seller to arrive. At one point, the informants left to drive to another seller's home, but they returned to K.F.'s garage without having bought any methamphetamine and continued to wait for the seller from Jackson.

Several hours later, investigators surveilling K.F.'s home observed a White male wearing a backwards hat walk into K.F.'s garage. Investigators saw only this individual enter the residence during the period of time from when the informants re-entered the garage to when the sale took place.

When the seller arrived, he, R.C., and K.F. went to a lofted platform in the garage, and the seller handed a bag to K.F., who then handed it to R.C. R.C. handed $700 to K.F. as payment. R.C. and S.C. left the garage shortly after the exchange. The contents of the bag were confirmed to be methamphetamine weighing just over 28 grams.

**Identification of Holinka**

Investigator LaCanne, who was surveilling the residence during the controlled buy, remained in the area and observed two vehicles that he had not seen earlier—a white Chevrolet Trailblazer and a "black" or "dark colored" Ford 500. Investigator LaCanne wrote down what he believed to be the Ford's license plate number: "5**85**NDV." (Emphasis added.) At this point, he had not observed the White male with the backwards hat leave the garage.

3

R.C. and S.C. met with investigators to debrief after the controlled buy. The informants told investigators that they had seen the seller before, but they did not know him personally. R.C. stated that the seller was at least six feet, five inches tall and in his mid to late twenties. S.C. described the seller as "real tall" and "really skinny," at least as tall as her son who is six feet, four inches tall, in his mid to late twenties, and Caucasian with "dishwater blonde hair." S.C. thought the seller was wearing a hat, but she was not certain.

After the debriefing, Investigator Soderholm contacted Investigator Koch of the Jackson County Sheriff's Office to ask if that agency had any information about local sellers matching the description that S.C. and R.C. provided. After hearing the physical description, Investigator Koch provided Holinka's name. Investigator Koch also stated that he had heard others refer to Holinka by the nickname "Too Tall." After learning Holinka's name, Investigator Soderholm looked up Holinka's driver's license information and learned that his driver's license listed him as six feet, five inches tall and 185 pounds. Additionally, Investigator Soderholm learned that Holinka's residence was in Jackson.

At Investigator Soderholm's request, Investigator Koch drove to Holinka's home in Jackson, and Investigator Koch reported back that "there was a dark-colored Ford 500 car parked in the driveway" with a license plate number of 575NDV. Based on all the information gathered, Investigators Soderholm and LaCanne concluded that Holinka was the seller from Jackson who sold methamphetamine to R.C.

Investigator Soderholm later travelled to Holinka's home in Jackson to interview him. Holinka admitted that he knew K.F., that he had been to K.F.'s home, and that he

4

drove a black Ford 500 until recently. But Holinka denied any involvement in the sale during the controlled buy.

As a result of the controlled buy, respondent State of Minnesota charged Holinka with one count of first-degree controlled-substance sale, one count of conspiracy to commit first-degree controlled-substance sale, and one count of aiding first-degree controlled-substance sale.[1]

**Defense Opening Statement at Trial**

The matter proceeded to trial. During the defense's opening statement, Holinka's attorney previewed the defense theory of the case. He stated:

> So, I'd like to start out with why is Justin Holinka a suspect and where did this name come from? As we heard a little bit ago you're going to hear about three people. [K.F., R.C., and S.C.] Now what's interesting is that those three people were involved in this case. The name of Justin Holinka did not come from them. The name of Justin Holinka came from law enforcement. That's very important in this case. As a result of getting that name from law enforcement, law enforcement then started to build their case around Justin Holinka.

Holinka's attorney then provided examples of discrepancies in the evidence that the defense believed Investigators Soderholm and LaCanne overlooked, including varying nicknames for the seller, varying colors of the seller's vehicle, varying pretrial statements from R.C., and the single-digit difference between the license plate number that Investigator LaCanne wrote down and the one reported by Investigator Koch. And

---

[1] *See* Minn. Stat. §§ 152.021, subd. 1(1) (first-degree controlled-substance sale), .096, subd. 1 (conspiracy), 609.05, subd. 1 (aiding, abetting) (2020).

Holinka's attorney argued that the investigation was flawed due to "confirmation bias," stating:

> Here's what happened. [Investigator] LaCanne fell into the trap and that trap is confirmation bias. And bias is something that's going to be very important in this case. What is confirmation bias? Confirmation bias is when we have a theory. We begin to investigate that theory and when we come across information contrary to our theory we just ignore it because we have to maintain our theory. And the modern parlance we want to maintain the narrative. That's what's going on in this case.

**K.F.'s Testimony**

K.F. testified that he knows Holinka, that Holinka had visited his home in the past, that K.F. "might have" seen Holinka driving a black car before, that Holinka's nickname is "the tall guy because he's a lot taller than everybody else," and that Holinka lives in Jackson. K.F. also admitted that Holinka "could have been" at his home on the day of the controlled buy.

**S.C.'s Testimony**

S.C. testified that the seller was White and approximately six feet, seven inches tall. When asked if she knew the seller's nickname, S.C. tried to identify a name that she heard K.F. use, but defense counsel objected on hearsay grounds and the district court sustained the objection. When asked if she saw the seller in the courtroom, S.C. responded, "I can't honestly answer that because I'm not positive it's him."

**R.C.'s Testimony**

R.C. testified that the seller was between the ages of 25 and 30, tall, and wearing a baseball cap. When asked if he saw the seller in the courtroom, R.C. responded, "I can't say I do."

**Investigator Soderholm's Testimony**

During direct examination, Investigator Soderholm explained the process of identifying Holinka by stating:

> Investigator [Koch] does the same job I do. . . . [S]o I called [him] up and I was like: Hey, we . . . just had somebody from Jackson bring ah, drugs down to Windom. They described—I told how the ah, informants described the party to me and immediately he said Justin Holinka. . . . [H]e said that he—he's Justin Holinka. He goes by to—like he's heard him called Too Tall in conversations that he's had with people.

Investigator Koch was not on the state's witness list, he did not testify, and Holinka's attorney did not object to Investigator Soderholm's testimony.

On cross-examination, Holinka's attorney asked Investigator Soderholm several questions about his conversation with Investigator Koch. Additionally, Holinka's attorney elicited, for the first time, testimony describing another conversation that Investigator Soderholm had with an officer from the Worthington Police Department. Investigator Soderholm testified that the Worthington officer told him that Holinka's nickname was "Stretch." The officer from Worthington also did not testify at trial.

**Investigator LaCanne's Testimony**

During direct examination, Investigator LaCanne explained how he realized that he might have made a notation error in writing down the license plate number of the Ford 500 outside of K.F.'s home. He stated:

> So I gave my note that I had of that license plate to [Investigator] Soderholm. He had made ah, a couple contacts with the Jackson County Drug Task Force and Worthington Drug Task Force. . . . [H]e described um, what [R.C. and S.C.] had seen to [Investigator Koch] . . . and I believe [Koch] was um, certain that it was Justin Holinka.

Holinka did not object to this testimony. Immediately after this testimony, Investigator LaCanne attempted to describe what the investigators had learned from the officer in Worthington, but Holinka's attorney objected on hearsay grounds and the district court sustained the objection.

**Defense Closing Argument**

After Investigator LaCanne's testimony, the prosecution rested, Holinka waived his right to testify, and the defense rested without calling witnesses.

During closing arguments, Holinka's attorney emphasized that none of the eyewitnesses at the controlled buy identified Holinka. He further argued that the investigators "were given the name of Justin Holinka from somebody who was not there and they did nothing to verify that they got the right guy." He urged the jury to "[r]emember the concept of confirmation bias" and reiterated that investigators "were given a name. They built their case around it. Any negative information [they were] just going to disregard. [They] were gonna go with [their] theory."

**Verdict and Sentencing**

The jury found Holinka guilty of all three counts, and Holinka was adjudicated guilty of first-degree controlled-substance sale. His motion for a dispositional departure was granted over the state's objection, and he was sentenced to a stay of execution of 65 months.

Holinka appeals.

## DECISION

**I. Any error in admitting unobjected-to testimony about an out-of-court statement identifying Holinka does not warrant reversal.**

Holinka argues that he is entitled to a new trial because the district court committed reversible error by allowing Investigators Soderholm and LaCanne to testify about an out-of-court statement made by Investigator Koch that identified Holinka as the seller at the controlled buy because (1) the testimony was inadmissible hearsay and (2) admission of the testimony violated his rights under the Confrontation Clause.

Holinka did not object to this testimony at trial. Generally, appellate courts review unobjected-to errors for plain error. *State v. Myhre*, 875 N.W.2d 799, 804 (Minn. 2016). Plain-error analysis is applied to constitutional challenges when the challenged testimony is not objected to at trial. *State v. Tscheu*, 758 N.W.2d 849, 863 (Minn. 2008). To establish reversible error under the plain-error test, "a criminal defendant must show that (1) there was an error, (2) the error was plain, and (3) the error affected the defendant's substantial rights." *Myhre*, 875 N.W.2d at 804. "If any prong of the test is not met, the claim fails." *State v. Jackson*, 714 N.W.2d 681, 690 (Minn. 2006). And, even if a defendant

9

demonstrates plain error, an appellate court should "correct the error *only* when it seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Pulczinski v. State*, 972 N.W.2d 347, 356 (Minn. 2022).

As we explain below, we conclude that Holinka's assertion of reversible error fails under plain-error review because he has not demonstrated that any error in admission of the testimony affected his substantial rights or that the fairness and integrity of judicial proceedings require a new trial. Because his argument fails on these bases, we need not address whether admission of the testimony was error that was plain. *See Jackson*, 714 N.W.2d at 690.

### A.    Substantial Rights

Holinka argues that the erroneous admission of the testimony at issue affected his substantial rights because it was the only evidence of identity—an element that the state was required to prove beyond a reasonable doubt.

"With respect to the substantial-rights requirement, [the defendant] bears the burden of establishing that there is a reasonable likelihood that the absence of the error would have had a significant effect on the jury's verdict." *State v. Horst*, 880 N.W.2d 24, 38 (Minn. 2016) (quotation omitted). In evaluating the reasonable likelihood that admission of the evidence significantly affected the verdict, appellate courts consider "(1) the manner in which the State presented the testimony, (2) whether the testimony was highly persuasive, (3) whether the State used the testimony in closing argument, and (4) whether the defense effectively countered the testimony." *State v. Matthews*, 800 N.W.2d 629, 634 (Minn. 2011).

10

As to the first and second *Matthews* factors, Holinka asserts that the out-of-court statement was highly persuasive because it was presented through the testimony of two experienced law enforcement officers. But the persuasiveness of this testimony was undercut by fact that the jury was aware—from defense counsel's opening statement, cross-examination, and closing argument—that Investigator Koch only suggested an identity based on a description and that he had no firsthand, personal knowledge of the identity of the seller at the controlled buy.

Holinka also argues that the out-of-court statement identifying him as the seller was highly persuasive because it was the only evidence that identified him as the seller. But the state offered other evidence to prove identity, including: (1) Holinka lived in Jackson, the city in which the seller lived; (2) Holinka drove a black Ford 500, the same type of car seen outside the location of the drug sale only after the suspect arrived; (3) the license plate number of the black Ford 500 seen at the controlled buy, recorded by Investigator LaCanne, and the license plate number of the black Ford 500 seen outside Holinka's residence, recorded by Investigator Koch, only differed by one digit; (4) Holinka and K.F. admitted that they knew each other and visited each other's homes; (5) K.F. admitted that Holinka visited sometime around the date of the sale; (6) Holinka's driver's license listed him as the same height that the informants provided of the seller; and (7) the informants' physical description of the seller, which the jury could compare to Holinka's physical appearance in the courtroom. The out-of-court statement naming Holinka was just one piece of circumstantial evidence of identity provided by the state.

As to the third *Matthews* factor, Holinka contends that the state argued during closing that Holinka's identity was proved by the out-of-court statement. This is not a fair characterization of the relevant portion of the state's closing argument, during which the state explained:

> [Investigator Soderholm] contacted his counterpart in the Jackson County Drug Task Force [Investigator Koch] and he describes to [Koch] we had this controlled buy; we had a seller from Jackson and he told them the description that [R.C. and S.C.] had told him. He's super tall, skinny, white guy between the ages of 26 and 28. And [Investigator Koch] immediately said that's Justin Holinka, he goes by the nickname Too Tall. Well, Investigator Soderholm says: Well, we got some cars and some plates. Can you check what's at his house? So, [Investigator Koch] went to Mr. Holinka's house in Jackson and there was a black Ford 500. License plate was 5-7-5-N-D-V.[2] One number off from the vehicle that Investigator LaCanne saw outside the buy while the seller was in the garage. After getting the name[,] Investigator Soderholm—well, he ran the plate. It came back registered to Justin Holinka and he looked up the driver's license information and it showed that Justin Holinka is 6'5, weighs 185 pounds and that he lives on White Street in Jackson. All of that evidence points to Justin Holinka being the seller. All of it.

The relevant portion of the state's closing argument is better characterized as a recitation of several pieces of evidence that proved Holinka's identity—not strictly an argument that Holinka's identity was proved by the out-of-court statement. Additionally, the state only mentioned the out-of-court statement once during its closing argument, which further suggests that the admission was harmless. *See State v. Fraga*, 898 N.W.2d 263, 274 (Minn. 2017).

---

[2] Holinka does not challenge the admission of this evidence (also provided by Investigator Koch) on appeal.

As to the fourth *Matthews* factor, Holinka argues that there was "little [he] could do to effectively counter the evidence" because he had no opportunity to cross-examine the declarant. But Holinka's counsel challenged the reliability of the evidence in closing by arguing that investigators "were given the name of Justin Holinka from somebody who was not there and they did nothing to verify that they got the right guy." Further, Holinka's counsel used the apparent issues with the "identification" to Holinka's advantage by arguing the "confirmation bias" theory. The record demonstrates that, contrary to Holinka's contention, he took advantage of several opportunities to counter the evidence and used it to his advantage.

Considering the *Matthews* factors, we conclude that there is not a reasonable likelihood that admission of the out-of-court statement significantly affected the verdict. Accordingly, any error in admission of the evidence did not affect Holinka's substantial rights and his claim of error fails on this prong of plain-error analysis.

## B. Fairness and Integrity

Further, even if we were to conclude that admission of the testimony at issue was plain error that affected Holinka's substantial rights, the interests of fairness and integrity of judicial proceedings would not compel us to grant a new trial in this case.

"Although the fairness, integrity, and public reputation of judicial proceedings is sometimes served by ordering a new trial when a defendant's substantial rights were affected by a plain error, that is not always the case." *State v. Huber*, 877 N.W.2d 519, 527 (Minn. 2016). Analysis of the fourth prong of plain error "does not focus on whether the alleged error affected the outcome resulting in harm to the defendant in the particular case,"

13

but rather on "whether failing to correct the error would have an impact beyond the current case by causing the public to seriously question whether our court system has integrity and generally offers accused persons a fair trial." *Pulczinski*, 972 N.W.2d at 356.

Holinka argues that this court should order a new trial to ensure fairness and integrity because the error denied him the opportunity of cross-examination in violation of the Confrontation Clause. But Holinka knew about the testimony at issue before trial—his counsel referenced it in his opening statement. Holinka knew that the declarant, Investigator Koch, was not on the state's witness list prior to trial and therefore knew that he would not have a chance to exercise his right to confront the declarant. At trial, Holinka objected to many hearsay statements and even elicited hearsay testimony from Investigator Soderholm. Had the defense taken action to exclude testimony of Investigator Koch's out-of-court statement when it learned that he would not testify, the state likely could have addressed the Confrontation Clause challenge by having the investigator testify. Given the issues created by Holinka's failure to object, it would be unfair to grant Holinka a new trial. *See State v. Modtland*, 970 N.W.2d 711, 723-24 (Minn. App. 2022) (concluding that it would be unfair to grant appellant a new trial where appellant knew the substance of the hearsay statements in an exhibit, knew the declarant would not testify, and objected to other statements contained in the exhibit), *rev. granted* (Minn. Apr. 27, 2022) *and ord. granting rev. vacated* (Minn. Mar. 14, 2023).

Additionally, the interest of fairness was served by the district court refraining from sua sponte striking the testimony because Holinka was allowed to present his theory of the case, which was tied to Investigator Koch's out-of-court statement. And it would not serve

14

the fairness or integrity of the judicial proceedings to order a new trial when it appears to have been a strategic decision by the defense to allow the testimony to be entered into evidence, even if the strategy turned out to be unsuccessful.

## II. There was no cumulative error in this case.

Holinka urges this court to grant him a new trial even if we "determine[] that neither the hearsay nor the Confrontation Clause errors, standing alone, warrant reversal" because "the combined effect of those errors denied Holinka a fair trial." "An appellant may be entitled to a new trial in rare cases where the errors, when taken cumulatively, have the effect of denying the appellant a fair trial." *Fraga*, 898 N.W.2d at 278 (quotation omitted).

Here, Holinka points to only one error. While he argues that the admission of the testimony at issue was erroneous for two reasons—(1) it was inadmissible hearsay for which no exception applied and (2) it violated the Confrontation Clause—its admission constitutes only a single error.[3] Because Holinka has not met his burden to establish that the cumulative effect of multiple errors denied him a fair trial, he is not entitled to a new trial on this basis.

---

[3] Holinka asserts that "[t]he State emphasized this evidence during its closing argument." It is unclear whether Holinka is attempting to assert that this use in closing argument was a second error or whether it was just the effect of the error that he already complains of. In any event, we decline to address any error in the state's recitation of this evidence during its closing argument because Holinka has not provided any analysis or argument on that issue and error is not readily apparent. *See State, Dep't of Labor & Indus. v. Wintz Parcel Drivers, Inc.*, 558 N.W.2d 480, 480 (Minn. 1997) (declining to address an inadequately briefed issue); *Louden v. Louden*, 22 N.W.2d 164, 166 (Minn. 1946) ("An assignment of error based on mere assertion and not supported by any argument or authorities in appellant's brief is waived and will not be considered on appeal unless prejudicial error is obvious on mere inspection.").

**III.    Holinka did not receive ineffective assistance of counsel.**

Holinka next argues that he is entitled to a new trial on the basis that his trial counsel was ineffective for failure to object to the admission of the out-of-court statement identifying him as the seller. Criminal defendants have a right to effective assistance of counsel. U.S. Const. amend. VI; Minn. Const. art. 1, § 6; *State v. Hokanson*, 821 N.W.2d 340, 357 (Minn. 2012).

Appellate courts apply the two-prong *Strickland* test to evaluate an appellant's ineffective-assistance-of-counsel claim. *State v. King*, 990 N.W.2d 406, 417 (Minn. 2023); *see Strickland v. Washington*, 466 U.S. 668, 687 (1984). Under the *Strickland* test, the appellant has the burden of showing (1) that their "attorney's representation fell below an objective standard of reasonableness" and (2) that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *King*, 990 N.W.2d at 417 (quotations omitted). If one prong is determinative, the reviewing court need not address the other. *State v. Rhodes*, 657 N.W.2d 823, 842 (Minn. 2003). Because ineffective-assistance-of-counsel claims involve mixed questions of law and fact, the standard of review is de novo. *See Strickland*, 466 U.S. at 698.

Regarding the first prong of the *Strickland* test, Holinka argues that his trial counsel's failure to object to the testimony at issue on either hearsay or Confrontation Clause grounds was objectively unreasonable because the "out-of-court statement was the sole piece of evidence identifying Holinka as the seller, an element the state was required to prove beyond a reasonable doubt" and therefore "there was no strategic advantage to not objecting." Holinka's argument is unpersuasive.

16

Appellate courts presume that trial counsel's performance is reasonable and give "particular deference to matters of trial strategy . . . such as whether to object to evidence." *Zumberge v. State*, 937 N.W.2d 406, 413 (Minn. 2019) (citation omitted); *see also Leake v. State*, 737 N.W.2d 531, 536 (Minn. 2007) ("Matters of trial strategy lie within the discretion of trial counsel and will not be second-guessed by appellate courts.").

Holinka's trial counsel indicated during opening statements his intent to rely on the testimony at issue as part of the defense's confirmation-bias theory. His counsel objected to hearsay throughout the trial but did not object when this testimony came up— presumably because it contributed to the defense theory of the case. And, contrary to Holinka's claim, as we described in Section I.A. above, this testimony was not the only circumstantial evidence of identity presented by the state. Therefore, Holinka's argument that it was an objectively unreasonable strategy to refrain from objecting to this evidence because without it the state could not prove its case beyond a reasonable doubt is not persuasive.[4]

We therefore conclude that Holinka has not met his burden to establish that his trial counsel's strategic choice not to object to the testimony at issue was objectively

---

[4] In his reply brief, Holinka asserts that, after the informants "did not identify Holinka as the seller [at trial], there was no strategy to not object[] to Investigator [Koch's] out of court identification." But this argument disregards the fact that the defense's theory of the case was "confirmation bias" and that theory was supported by Investigator Koch's statement. We are therefore not convinced that, as the evidence developed during trial, the district court should have decided that the defense's "confirmation bias" strategy had become unreasonable and sua sponte excluded the statement.

unreasonable. Because Holinka's claim fails the first prong of the Strickland test, we need not address the second prong. *See Rhodes*, 657 N.W.2d at 842.

**Affirmed.**